Robert E. Gooding, Jr. (SBN 50617)
Roman E. Darmer (SBN 212578)
Helen Chae MacLeod (SBN 206618)
HOWREY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614
Telephone: (949) 721-6900
Facsimile: (949) 721-6910
Email: goodingr@howrey.com
Email: darmerr@howrey.com
Email: macleodh@howrey.com

Attorneys for HOWREY LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>vs.<br><br>KENT H. ROBERTS,<br><br>        Defendant. | Case No. C-07-4580 MHP<br><br>**NON-PARTY HOWREY LLP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KENT H. ROBERTS' REQUEST FOR PRODUCTION OF ATTORNEY NOTES**<br><br>Hearing Date:  February 25, 2008<br>Time:           2:00 p.m.<br>Courtroom:    15<br>Judge:          Hon. Marilyn H. Patel |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ...................................................................................................................1

II. ISSUES PRESENTED ...........................................................................................................2

III. STATEMENT OF FACTS .....................................................................................................2

    A. Kent Roberts' Admitted Backdating and Termination. ..............................................2

    B. The Independent Investigation. ...................................................................................3

    C. The Special Committee's Presentation to the Board. .................................................4

    D. Presentations of the PowerPoint to Third Parties. .....................................................5

    E. Other Communications With the SEC and DOJ. .......................................................6

    F. Howrey's Production in Response to Defendant Roberts' Subpoena. .......................................................................................................................7

    G. Ongoing Discovery by Defendant Roberts. ................................................................7

IV. ARGUMENT ..........................................................................................................................8

    A. There Has Been No Waiver of the Attorney-Client Or Work Product Privileges. ........................................................................................................8

    B. *United States v. Reyes* Does Not Support an Order Compelling Production of Attorney Interview Notes. ................................................................8

    C. *Ryan v. Gifford* Similarly Does Not Provide a Basis for Production Here. .........................................................................................................10

    D. Roberts Has Failed to Demonstrate Substantial Need and Undue Hardship. ....................................................................................................................11

    E. Roberts Is Not Entitled to Howrey's Notes of Communications With McAfee's Board of Directors Because Those Notes Contain Privileged Communications. ......................................................................................13

    F. Roberts Is Not Entitled to the Opinion Work Product Contained in Howrey's Notes of Communications With the Government. ..............................14

V. CONCLUSION .....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Accord Shields v Sturm, Ruger & Co.*,
   864 F.2d 379 (5th Cir. 1989) ............................................................................................... 6

*Handgards, Inc. v. Johnson & Johnson*,
   413 F. Supp. 926 (N.D. Cal. 1976) ..................................................................................... 12

*Holmgren v. State Farm Mutual Auto. Ins. Co.*,
   976 F.2d 573 (9th Cir. 1992) .............................................................................................. 12

*In Re BCE West, L.P.*,
   2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000) ................................................................... 13

*In Re Napster, Inc. Copyright Litigation*,
   2006 U.S. Dist. LEXIS 33036 (Apr. 21, 2006) .................................................................. 11

*Kintera, Inc. v. Convio, Inc.*,
   219 F.R.D. 503 (S.D. Cal. 2003) ................................................................................... 11, 14

*Ryan v. Gifford*,
   No. 2213-CC, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007) ........................................ 10, 11

*Ryan v Gifford*,
   2008 WL 43699 (Del. Ch. Jan. 2, 2008) ....................................................................... 10, 11

*United States ex rel. Blackwell v. Framzen*,
   688 F.2d 496 (7th Cir. 1982) .............................................................................................. 13

*United States v. Eden*,
   659 F.2d 1376 (9th Cir. 1981) ............................................................................................ 12

*United States v. Reyes*,
   239 F.R.D. 591 (N.D. Cal. 2006) ........................................................................... 1, 8, 9, 12

**RULES**

Federal Rule of Criminal Procedure 17(c) ................................................................................. 9

Federal Rule of Civil Procedure Rule 26 ................................................................................. 12

Federal Rule of Civil Procedure 26(a) ....................................................................................... 7

Federal Rule of Civil Procedure Rule 26(b)(3) ....................................................................... 11

## I. INTRODUCTION

Defendant Kent H. Roberts ("Roberts") seeks to compel non-party Howrey LLP ("Howrey"), outside counsel to the Special Committee of the Board of Directors of McAfee, Inc. ("McAfee" or "the Company"), to produce its notes of interviews of current and former employees, officers and directors of McAfee taken in the course of an independent investigation of potential stock option backdating at the Company during the ten-year period from 1995 through 2006. Those notes do not contain a verbatim recitation of questions asked and answers given but rather consist of attorneys' impressions, conclusions, and opinions relating to the substance of each interview. In short, the notes are classic attorney-client privileged communications or attorney opinion work product, or both.

Although the Special Committee has cooperated fully with the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") at every stage of the investigation, the interview notes have never been shared with or provided to the government, McAfee's independent auditors, or plaintiffs' counsel in civil actions against McAfee. Instead, the Special Committee and its advisors provided to McAfee's Board of Directors ("Board"), and ultimately to the SEC, DOJ and the outside auditors, a detailed PowerPoint presentation containing a compilation of non-privileged source documents and emails concerning a number of problematic options grants. That PowerPoint and all of the source documents have been produced in full to Roberts. As discussed in Sections IV.A–C below, no waiver of the attorney-client privilege or work product doctrine has occurred, and the cases relied upon by Roberts are plainly distinguishable. In this civil case, unlike in *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006), Roberts has at his disposal all of the discovery tools to obtain the underlying factual information and evidence he desires for his defense. Roberts has not made the requisite showing of necessity to compel production of opinion work product. For all these reasons, Roberts' request for production of the interview notes should be denied.

Roberts also has demanded production of certain other attorney work product from Howrey, specifically, notes taken by Howrey attorneys during meetings with the Board or during meetings or telephone conversations with the government. The notes taken by Howrey attorneys during meetings with the Board are plainly protected by the Board's attorney-client privilege, and that privilege has not

-1-
NON-PARTY HOWREY'S OPP. TO ROBERTS' REQUEST FOR PRODUCTION OF ATTORNEY NOTES
Case No. C-07-4580 MHP

DM_US:21002929_9

been waived. Thus, as explained more fully in Section IV.E below, the Court should not require those notes to be produced. As for notes taken by Howrey attorneys during meetings with the SEC and DOJ, Howrey has offered to produce those notes, subject only to redaction necessary to protect the mental impressions of the attorneys or other work product. As noted in Section IV.F below, production in that form is the correct result.

## II.     ISSUES PRESENTED

1.     Whether Defendant Roberts is entitled to production of Howrey's privileged investigative interview notes when those notes have never been provided to third parties and there has been no waiver of the attorney-client privilege or attorney work product protection.

2.     Whether Defendant Roberts is entitled to production of opinion work product contained in Howrey's privileged investigative interview notes when he has access to all of the discovery tools provided by the Federal Rules of Civil Procedure, as well as a list of witnesses and available contact information readily available to him.

3.     Whether Defendant Roberts is entitled to production of Howrey's notes taken during meetings with McAfee's Board of Directors when such notes reflect attorney-client privileged communications, and the privilege has not been waived.

4.     Whether Defendant Roberts is entitled to all portions of Howrey's notes taken during meetings with the government when such notes contain attorney work product that has not been waived and must be redacted prior to any production.

## III.    STATEMENT OF FACTS

### A.     Kent Roberts' Admitted Backdating and Termination.

From January 2001 to May 2006, Defendant Roberts, a member of the Texas state bar, was general counsel of McAfee. *See* Compl., ¶ 7. In May 2006, an independent research organization identified McAfee as one of several companies that had a statistical risk for having backdated options grants during the period from 1997 through 2002. *See* Declaration of Robert E. Gooding, Jr. dated February 15, 2008 ("Gooding Decl."), ¶ 2. Thereafter, McAfee's management began an informal internal review of certain historical stock option grants. Management quickly identified anomalies in

1  certain historical stock option grants, including a February 14, 2000 grant of 20,000 options to Roberts.
2  Roberts, who had become aware of the internal review, ultimately admitted to the CEO, two outside
3  directors, and an outside lawyer for the Company that he, along with the Company's former Controller,
4  had secretly accessed McAfee's internal electronic system for tracking employee stock options and
5  changed the option grant date for his own February 14, 2000 grant to April 14, 2000. *See* Compl., ¶
6  17. Roberts' manipulation had the effect of lowering his exercise price by almost $10, from $29.63 per
7  share to $19.75 per share, thus instantly rendering his options back "in the money." *See id.* ¶¶ 13-15 &
8  17. The Board acted quickly on this information and, on May 29, 2006, terminated Roberts'
9  employment for cause.

**B.     The Independent Investigation.**

The Board contemporaneously decided that McAfee should undertake an independent investigation to evaluate the conduct of McAfee officers, employees and directors involved in the options granting process and whether the Company's accounting for stock options grants between January 1, 1995 and March 31, 2006 was proper.[1] *See* Gooding Decl., ¶ 2. The Board directed that the investigation be conducted by a Special Committee comprised of Board members who had not previously served on the Compensation Committee or otherwise been involved in the options granting process. The Special Committee was charged with determining whether any improper conduct had occurred and whether any remedial measures, including restatement of historical financial statements, were necessary.

To assist it, and to ensure independence, the Special Committee retained an experienced law firm, Howrey, which had not previously represented the Company or any of its current or former management. A team of Howrey attorneys, together with FTI Consulting, Inc. ("FTI"), a forensic accounting and electronic evidence collection specialist hired by Howrey, coordinated the investigative efforts. *See id.* ¶ 3.

---

[1] Around the same time, the SEC and DOJ commenced investigations of potential stock option backdating at McAfee. McAfee shareholders also commenced derivative actions.

In the course of the investigation, Howrey gathered and reviewed over one million pages of hard-copy documents and more than 3.3 million email communications and electronic documents. Howrey compiled relevant documents regarding every significant stock option grant between 1995 and 2006, as well as the Company's accounting for those grants. Those materials were ultimately collected in a large number of individual binders organized by option grant and individual (hereinafter, "Source Binders"). *See id.*

In addition, Howrey and FTI interviewed 84 current and former McAfee employees, directors, officers and other individuals regarding the Company's stock option granting practices and procedures, as well as particular stock option grants. *See id.* ¶ 4. No representatives of the Company's management or McAfee's outside counsel participated in any of the interviews. Given the broad scope of the investigation, a substantial number of the interviewees provided information that had nothing to do with Roberts, his stock option grants, his role in the stock option granting process, or the other grants identified in the Complaint.

During most of the interviews, Howrey and/or FTI personnel took handwritten notes. *See id.* ¶ 5. Those interview notes did not contain a verbatim recitation of questions asked and answers given but rather contained the attorneys' impressions, conclusions, and opinions about the substance of the interviews. In a few instances, memoranda were prepared from the handwritten notes. The interview notes and memoranda have never been provided to the Board, the Company's outside auditors, the SEC, DOJ, plaintiffs' counsel in civil actions or anyone else outside Howrey. *See id.*

### C. The Special Committee's Presentation to the Board.

At the conclusion of the investigation, the Special Committee, in conjunction with Howrey, prepared a detailed PowerPoint presentation for the Board. *See id.* ¶ 6. The PowerPoint described the scope and methodology of the investigation and included some of the key documents and emails compiled in the Source Binders. Certain documents and emails were excerpted or highlighted. The PowerPoint did not contain findings, conclusions, opinions or legal theories of Howrey or any excerpts or summaries from the interview notes. Instead, it set forth the underlying *facts* with respect to a number of problematic transactions in which it appeared that misdating or backdating of stock options

grants may have occurred, with the expectation that the Board would reach its own conclusions and take whatever corrective personnel actions or other remedial actions it deemed necessary.

On October 10, 2006, the Special Committee presented the PowerPoint to the Board. *See id.* ¶ 7. No member of Company management or any third parties were present during the meeting, other than McAfee's regular outside corporate counsel. After presentation of the initial slides relating to the scope and methodology of the investigation, the Company's former CEO, George Samenuk, was excused from the meeting and did not return. At the request of the Special Committee, certain individual directors were excused from the meeting during the Special Committee's discussion of grants relating to those directors. During the meeting, Howrey answered all of the Board's questions, including questions about what certain witnesses said in the course of their interviews. In doing so, Howrey attorneys did not review the interview notes prior to the meeting, take those notes to the meeting, or refer to the notes in answering questions at the meeting. In contrast, all of the Source Binders were physically available for inspection during the meeting. *See id.*

D.   **Presentations of the PowerPoint to Third Parties.**

Howrey ultimately presented a virtually identical PowerPoint in a meeting with members of the enforcement staff of the SEC on November 2, 2006.[2] *See id.* ¶ 8. Attendees at that meeting were Howrey, FTI, the SEC, and two members of the Special Committee. On November 8, 2006, Howrey presented the same PowerPoint in a meeting with DOJ personnel. During these meetings, Howrey responded to questions from the government as to what certain individuals had said about particular issues during the course of their interviews. However, Howrey did not provide its interview notes, take them to the meetings or review them prior to the meetings. Indeed, the Special Committee declined a specific request from the SEC to produce its interview notes and summaries. *See id.*

At the conclusion of the internal investigation, and in anticipation of the Company's restatement of historical financial statements, the Special Committee and its advisors also met with the

---

[2] Roberts is in possession of the entirety of the PowerPoint presentation to the SEC. *See id.* ¶ 9. In addition, Howrey has provided Roberts with a list of the few minor differences between that PowerPoint and the one presented to the Board of Directors on October 10, 2006.

Company's outside auditors, presented the PowerPoint to them, and responded to questions about what certain witnesses had said in the course of their interviews. *See id.* ¶ 10. However, Howrey did not provide access to its interview notes or summaries to the auditors, despite a request to do so.

In November 2007, at the direction of the Special Committee, Howrey met with counsel for plaintiffs in the derivative actions in connection with settlement discussions. In the course of that meeting, Howrey described the scope and methodology of the investigation and shared a few non-privileged documents from the Source Binders. *See id.* ¶ 11. Howrey did not present the PowerPoint or refer to its interview notes during the meeting.[3]

### E. Other Communications With the SEC and DOJ.

Over the course of Howrey's engagement with the Special Committee, Howrey spoke by telephone with personnel from the SEC and DOJ on numerous occasions. *See id.* ¶ 12. Although one of the attorneys on the investigative team reviewed some of the interview notes in advance of some of the calls with the government, and Howrey responded to all of the government's questions, Howrey never provided its interview notes to the government. Howrey did not have or refer to the interview notes during the calls with the government. *See id.*

Howrey attorneys also took notes during some meetings and telephone conversations with the government. Those notes reflect the substance of communications with the government, but also contain the attorneys' mental impressions, conclusions and opinions. Howrey has never shared or provided these notes with any third party. *See id.*

---

[3] At the direction of the Special Committee, Howrey declined to produce its interview notes in response to discovery requests from Kevin Weiss, McAfee's former president, who was terminated for cause in the course of the internal investigation. An arbitrator presiding over the claims brought by Weiss against the Company initially denied Weiss's motion to compel production but ordered Howrey to provide the facts through testimony relating to Mr. Weiss's options and conduct that had been discovered in the course of the investigation. Thereafter, the arbitrator denied Weiss's renewed motion to compel production of Howrey's interview notes. *Accord Shields v Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (compelled disclosure of protected material in one case does not prevent a party from claiming work product protection before another court).

### F. Howrey's Production in Response to Defendant Roberts' Subpoena.

On or about November 2, 2007, Defendant Roberts subpoenaed Howrey for various categories of documents, including the interview notes and summaries and notes from meetings with the government and the Board. Howrey produced 872 pages of non-privileged documents in response, including:

- letters detailing the scope and methodology used by Howrey in its investigation, including a list of the current and former employees, directors and officers interviewed, as well as all available contact information;
- written summaries of recommended accounting treatment for certain stock option grants reviewed during the course of the investigation;
- pages 1-33 of the November 2, 2006 PowerPoint presentation (discussing investigation scope and methodology) that Roberts had not previously received from other sources; and,
- written communications between Howrey and the enforcement staff at the SEC and/or DOJ.

In addition, Roberts had previously received in response to his subpoena to McAfee more than 30,000 pages of materials collected during Howrey's investigation, including all of the contents of the Source Binders.

### G. Ongoing Discovery by Defendant Roberts.

In his Rule 26(a) initial disclosures in this litigation, Defendant Roberts has identified 41 individuals whom he wishes to depose, including many of the individuals interviewed by the Special Committee. Eleven witnesses will have testified as of the filing date of this Memorandum, including directors Robert Pangia, Denis O'Leary, and Robert Bucknam, current and former executives or employees George Samenuk, Eric Brown, Stephen Richards, David Roche, Kandis Thompson, Eric Wong and Jennefer Koopman, and outside stock administration consultant Marianne Snook. Roberts is attempting to schedule at least seven more depositions, including former director Robert Dutkowsky, former audit partner Larry DeBower, former McAfee president Art Matin, and current and former employees Sylvia Garcia-Lechelt, Angela Bullock, Charles Deaton and Lillian Meggs.

## IV. ARGUMENT

### A. There Has Been No Waiver of the Attorney-Client Or Work Product Privileges.

Although the Special Committee and Howrey cooperated fully with the government and shared the facts discovered in the course of the investigation, they did so without waiver of the attorney-client and/or attorney work product privileges. Howrey did not provide its interview notes and summaries to any third party. The Special Committee specifically declined to provide access to the interview notes to the SEC and the outside auditors, despite direct requests to do so.

The only information provided by Howrey to third parties has been the PowerPoint presentation and the Source Binders, which contain *facts* — not attorney-client privileged communications or attorney work product. The PowerPoint is entirely made up of slides describing the scope and methodology of the investigation and certain non-privileged documents and emails from the Source Binders relevant to certain problematic transactions. The fact that Howrey responded to questions from third parties about some of the interviews does not constitute waiver because its responses were limited to specific *facts*, not verbatim recitations of questions asked and answers given or the attorneys' mental impressions, conclusions or opinions.

### B. *United States v. Reyes* Does Not Support an Order Compelling Production of Attorney Interview Notes.

In his letter brief dated January 28, 2008, and in the telephonic hearing with the Court on January 30, Roberts relied heavily on Judge Breyer's recent decision in *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006). Roberts' reliance on that case is misplaced.

*First*, as the Court observed during the telephonic hearing, *Reyes* is a criminal case in which the preservation of the attorney-client and work product privileges was balanced against the strong Sixth Amendment right to effective assistance of counsel and confrontation of witnesses. In contrast, this is a civil case in which the fundamental rights of a criminal defendant are not implicated.[4]

---

[4] Indeed, because Roberts' criminal trial is scheduled for April 15, 2008, while civil discovery in this case is ongoing, Roberts is effectively obtaining discovery in his criminal case far beyond what the Federal Rules of Criminal Procedure provide for most defendants.

*Second*, the subpoena to the outside law firms in the *Reyes* case was issued pursuant to Federal Rule of Criminal Procedure 17(c). Because it was a criminal case, the defendant in *Reyes* had no opportunity to conduct *any* pretrial discovery of fact witnesses. Here, in contrast, Roberts has the full panoply of civil discovery tools available to him. Through his discovery requests, Roberts now has possession of virtually *all* of the relevant documents and emails discovered during the course of the investigation relating to the claims against him. In particular, Roberts has discovered the entire list of witnesses interviewed by Howrey, along with all available contact information. In stark contrast with the defendant in *Reyes*, Roberts has deposed, or will depose, many of those witnesses. He is also free to interview or otherwise contact any of the other witnesses prior to trial. There is no suggestion that any of the individuals who were interviewed by Howrey have, or will, assert their Fifth Amendment rights. Thus, Roberts cannot claim, as the defendant in *Reyes* did, that the interview notes are the only available source of the information he seeks or that production of those privileged notes is in any way necessary.

*Third*, the attorney interview notes at issue in *Reyes* had unquestionably been shared with third parties. The law firms in that case had disclosed the contents of their investigative interview memoranda to the SEC. *See id.* at 596. Here, in contrast, Howrey has not provided its interview notes to *any* third parties, much less the privileged communications, mental impressions, conclusions, opinions and legal theories contained therein.

*Finally*, the relief ultimately granted in *Reyes* was much narrower than the extraordinary relief sought by Roberts here. In *Reyes*, the court only ordered production of the interview notes for *in camera* inspection. *See* 239 F.R.D. at *21-22. The court deferred ordering production of any portion of the interview notes to the defendant until after the witnesses testified on direct examination *and* the court determined that the interview notes contained relevant impeachment material. Thus, the court did not order wholesale production of the privileged notes to the defendant in *Reyes* prior to trial. Consequently, *Reyes* does not support the broad relief that Roberts seeks in this case.

### C. *Ryan v. Gifford* Similarly Does Not Provide a Basis for Production Here.

In his January 28, 2006 letter brief, Roberts also relied heavily on the recent Delaware decision in *Ryan v. Gifford*, No. 2213-CC, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007). That case arose in the context of shareholder derivative litigation against corporate defendants accused of backdating stock options. Plaintiffs sought a written report made by a special committee to the full board of directors. The *Ryan* court ordered the report produced on the grounds that the special committee's presentation to the board constituted a waiver of privilege. However, the court made clear that its decision was based on a number of specific facts *not* present here. Specifically,

- Attorneys for individual directors named as defendants in the derivative action were present at the board meeting at which the special committee's report was presented; and,
- During summary judgment proceedings in the derivative action, certain director-defendants had relied heavily upon privileged information contained in the Special Committee's report in an effort to exonerate themselves from liability, while at the same time attempting to withhold the report from plaintiffs' counsel.

*See* 2008 WL 43699 (Del. Ch. Jan. 2, 2008), at *2-3 (denying application for order certifying an interlocutory appeal). The facts of this case could not be more different.

*First*, at the October 10, 2006 presentation to the Board, only the Special Committee, Howrey and independent directors of the Board were in attendance at all crucial times. The Board excused certain directors from the meeting during discussion of grants relating to those directors, and the CEO was excused for virtually all of the meeting. No counsel for any third parties was present. During the meeting, Howrey answered all of the Board's questions, including questions about some of the statements that some witnesses made during the interviews. However, to respond to the Board's inquiries, Howrey attorneys did not review the interview notes prior to the meeting, take those notes to the meeting, or refer to the notes in answering questions at the meeting. Rather, the Board had available to it the PowerPoint as well as all of the Source Binders, to which it could refer during the meeting.

*Second*, to the extent that any director present during the October 10 Board meeting was also a defendant in the derivative litigation, no director has used the PowerPoint or any interview notes in defense of those claims or to assert non-liability.

*Third*, unlike in *Ryan*, the availability of the Special Committee's "report" is not an issue here. The PowerPoint presented to the Board and the government has already been produced to Roberts. As for attorneys' interview notes, the *Ryan* court declined to order their wholesale production because they clearly constituted protected attorney work product. Accordingly, the court only ordered *in camera* inspection of the notes. *See Ryan*, 2007 WL 4259557, at *4.

These key factual differences between *Ryan* and this case mandate denial of Roberts' request for production of the interview notes. Indeed, the facts are identical to the scenario that the *Ryan* court observed would *not* require production of privileged attorney notes:

> The decision [to order production] would *not* apply to a situation (unlike that presented in this case) in which board members are found to be acting in their fiduciary capacity, where their personal lawyers are not present, and where the board members do not use the privileged information to exculpate themselves. . . .

2008 WL 43699, at *5 (emphasis added). For all these reasons, *Ryan* provides a clear basis for denying Roberts' request for Howrey's interview notes.[5]

### D. Roberts Has Failed to Demonstrate Substantial Need and Undue Hardship.

Even if the Court were to find that a waiver of the attorney-client privilege has somehow occurred, Roberts still has failed to meet the stringent requirements necessary to overcome the protection afforded by the attorney work product doctrine. To obtain discovery of non-opinion work product, the party seeking discovery must, under Rule 26(b)(3), establish that it "has substantial need . . . and . . . is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Opinion work product, on the other hand, "receives nearly absolute protection." *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003). Thus, discovery of an attorney's mental impressions, conclusions, opinions and legal theories is permitted *only* where the information is

---

[5] During the January 30, 2008 telephonic discovery hearing, this Court mentioned that its opinion in *In Re Napster, Inc. Copyright Litigation*, 2006 U.S. Dist. LEXIS 33036 (Apr. 21, 2006) might have some bearing on the issue of waiver in this dispute. Having reviewed that opinion, however, the issue in *Napster* was whether the crime-fraud exception vitiated the attorney-client privilege, an entirely different issue than at stake here. Howrey is unaware of another opinion from the *Napster* copyright litigation that is relevant to the attorney-client privilege, attorney work product and waiver issues involved in this discovery dispute.

-11-
NON-PARTY HOWREY'S OPP. TO ROBERTS' REQUEST FOR PRODUCTION OF ATTORNEY NOTES
Case No. C-07-4580 MHP

DM_US:21002929_9

"directly at issue and the need for production . . . compelling."[6] *See Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 933 (N.D. Cal. 1976); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

Roberts cannot come close to meeting this high standard. As noted above, Roberts is already in possession of all of the documents containing the underlying facts concerning the grants at issue and the particular conduct of which he is accused. He has a list of all of the witnesses interviewed by Howrey, along with all available contact information. Armed with that information, Roberts has been conducting extensive depositions in this case and is free to interview or depose any of those witnesses about the underlying options grants and McAfee's accounting in order to obtain relevant and admissible evidence.[7] Roberts has made no showing that any of the witnesses is physically unavailable, and none have asserted or are expected to assert their Fifth Amendment rights.

Moreover, Roberts cannot come close to a showing of the "compelling need" that he must demonstrate to obtain production of the *opinion* work product contained in the interview notes. Howrey's mental impressions, conclusions, opinions and/or legal theories are far from being "directly at issue" in this litigation. They are *not at issue at all* because Roberts' termination for cause and the government's investigation of his admissions of wrongdoing occurred *before* the Special Committee investigation even began. Howrey's impressions or thoughts as may have been memorialized in the interview notes are not at issue with respect to the claims brought by the SEC against Defendant Roberts. Thus, Roberts cannot demonstrate a compelling need.

---

[6] Notably, in *Reyes*, the defendant was required to demonstrate that the subpoenaed materials were *not* available from any other source, in addition to satisfying Federal Rule of Criminal Procedure, Rule 17 requirements for relevance, specificity and admissibility. *See id.* at 600 (citing *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)). This burden is essentially no different than that imposed in civil discovery under Federal Rule of Civil Procedure, Rule 26. As noted, Roberts cannot possibly establish that the underlying information in the interview notes is unavailable from other sources, namely, from the witnesses themselves or the Source Binders.

[7] Indeed, Howrey's interview notes constitute hearsay and are thus inadmissible in and of themselves. Even the *Reyes* court recognized this basic impediment to ordering production of attorney interview notes for impeachment purposes. *See* 239 F.R.D. at *15-16 ("The first set of materials — that is, 'summaries, notes and memoranda related to the interview of Brocade employees' — includes only hearsay. . . . Simply put, Reyes has proffered no persuasive reason why the written records generated by MoFo or WSG&R would be admissible in and of themselves.").

-12-
NON-PARTY HOWREY'S OPP. TO ROBERTS' REQUEST FOR PRODUCTION OF ATTORNEY NOTES
Case No. C-07-4580 MHP

DM_US:21002929_9

Nor does Defendant Roberts' unbridled speculation that the interview notes may contain impeachment material provide the need that he must establish to obtain production. Even in criminal cases where the Sixth Amendment right of confrontation applies, courts have denied requests to use attorney-client privileged material for impeachment purposes where there are alternative means to impeach a witness's credibility. *See, e.g., United States ex rel. Blackwell v. Franzen*, 688 F.2d 496, 502 (7th Cir. 1982) (attorney-client privileged communications properly held unavailable for impeachment purposes where defendant had ample opportunity through other non-privileged material to impeach the witness's credibility). As described above, Roberts has all of the civil discovery tools available to him to obtain potential impeachment evidence. Roberts therefore has failed to demonstrate a compelling need for Howrey's interview notes on that basis.

**E.   Roberts Is Not Entitled to Howrey's Notes of Communications With McAfee's Board of Directors Because Those Notes Contain Privileged Communications.**

The Court should deny Roberts' request that Howrey produce notes of communications with McAfee's Board because those notes are protected by the attorney-client privilege, and there has been no waiver. In *In Re BCE West, L.P.*, a corporation's board of directors established a special committee comprised of two independent directors to investigate the possibility of certain corporate acquisitions. *See* No. M-8-85, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000). The special committee was authorized to retain its own counsel and did so. Throughout the course of the investigation, the special committee's lawyers had communications with the board of directors, which was represented by its own outside counsel. In granting a motion to quash a subpoena seeking those communications, the court held that communications between the special committee's attorneys and the board of directors "were part of the transaction process and did not destroy or waive the Special Committee's attorney-client privilege. That privilege remained intact." *Id.* at *2.

The Court should apply the same reasoning here. McAfee's Board charged the Special Committee with the broad mission of investigating potential stock option backdating and recommending any necessary remedial measures. The Special Committee was created by the Board, and it was intended that the Special Committee would report as necessary to the Board.

Communications between the Special Committee's attorneys and the Company's Board were a necessary part of the investigation as a whole. Care was taken to ensure that no third parties were present at any Board meeting at which the Special Committee reported to the Board and that the Company's former CEO and Chairman was excused from any meeting at which his conduct was discussed. Other directors were excused at appropriate times when options grants relating to them were discussed. Given these facts, there is no basis for concluding that the attorney-client privilege was waived by communications between the Special Committee and the Board. Accordingly, Roberts' request for production of Howrey's notes containing such communications should be denied.

### F. Roberts Is Not Entitled to the Opinion Work Product Contained in Howrey's Notes of Communications With the Government.

One of the categories of documents Roberts has requested is Howrey's notes of meetings and telephone conversations with the government. Howrey has offered to produce those notes, provided only that the limited portions of the notes reflecting attorneys' mental impressions are redacted. Roberts has rejected this offer, contending he is entitled to all of the notes. *See* Gooding Decl., ¶ 14. As noted above in Section IV.D, because opinion work product is afforded near absolute protection, there is no good faith basis for Roberts' insistence that Howrey produce the notes of its communications with the government in their entirety. *See Kintera*, 219 F.R.D. at 507.

## V.  CONCLUSION

Defendant Roberts' extraordinarily broad request for Howrey's privileged interview notes should be denied because there has been no waiver of the attorney-client or work product privileges. The interview notes and notes taken during meetings with McAfee's Board contain privileged communications and mental impressions, conclusions, opinions and legal theories, and have not been provided to third parties. Moreover, Roberts has received all relevant source materials and is free to interview or depose all of the witnesses interviewed by Howrey in the course of the internal investigation. Thus, to order production of the notes, where there has been no waiver of the attorney-client and/or work product privileges and a total failure on Roberts' part to meet his burden of need, would be wholly unfounded and unjustified under applicable law. Finally, Roberts is overreaching in

1  seeking those limited portions of notes taken during communications with the government that contain
2  attorneys' mental impressions.  Howrey respectfully urges this Court to deny Roberts's request that
3  Howrey produce all of its attorney notes in response to the subpoena.

5  Dated:  February 15, 2008                    HOWREY LLP

                                                By: _____
                                                    Robert E. Gooding, Jr.
                                                    Roman E. Darmer
                                                    Helen Chae MacLeod

                                                Attorneys for HOWREY LLP

HOWREY LLP

-15-
NON-PARTY HOWREY'S OPP. TO ROBERTS' REQUEST FOR PRODUCTION OF ATTORNEY NOTES
Case No. C-07-4580 MHP

DM_US:21002929_9