1  COOLEY GODWARD KRONISH LLP
   STEPHEN C. NEAL (170085) (nealsc@cooley.com)
2  WILLIAM S. FREEMAN (82002) (freemanws@cooley.com)
   SHANNON M. EAGAN (212830) (seagan@cooley.com)
3  EINAT SANDMAN CLARKE (234776) (eclarke@cooley.com)
   Five Palo Alto Square
4  3000 El Camino Real
   Palo Alto, CA  94306-2155
5  Telephone:      (650) 843-5000
   Facsimile:       (650) 857-0663
6
   Attorneys for Defendant
7  Kent H. Roberts

8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12

13  SECURITIES AND EXCHANGE          Case No.  C 07-04580 MHP
    COMMISSION,
14                                   **DEFENDANT KENT H. ROBERTS'**
                   Plaintiff,        **MOTION TO COMPEL PRODUCTION OF**
15                                   **DOCUMENTS FROM THIRD PARTY**
           v.                        **HOWREY LLP**
16
    KENT H. ROBERTS,                 Date:    February 25, 2008
17                                   Time:    2:00 p.m.
                   Defendant.        Judge:   Hon. Marilyn H. Patel
18

19                                   DISCOVERY MATTER

20                                   **[Amended Public Version]**

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

III.  REQUESTS AND DOCUMENTS IN DISPUTE ................................ 5

IV.  ARGUMENT ........................................................................................ 5

     A.    Roberts Is Entitled to Production of Howrey's Documents Because the Information He Seeks is Crucial to the Preparation of His Case ........................... 5

          1.    The Federal Rules of Civil Procedure Give Roberts Broad Latitude to Take Discovery from McAfee ................................................. 5

          2.    The Information Roberts Seeks Is Critical to His Defense ........................ 5

     B.    McAfee Waived the Attorney-Client Privilege and Work Product Doctrine With Respect to the Information Provided to the Government and Other Adversaries ........................................................................ 6

          1.    The Attorney-Client Privilege and Work Product Doctrine ..................... 6

          2.    Both Privileges Can Be Waived by Disclosure to Adverse Third Parties ........................................................................ 7

          3.    Howrey's Repeated Disclosures to McAfee's Adversaries Constituted Waiver ........................................................................ 8

               a)    The Doctrine of Waiver Applies Even More Powerfully to Civil Cases Than to Criminal Cases ..................................... 9

               b)    Howrey's Arguments Against a Finding of Waivers Are Unavailing ........................................................................ 11

               c)    The Napster Case Does Not Preclude a Finding of Waiver Here ........................................................................ 12

               d)    The Special Committee Also Waived Privilege by Disclosure to McAfee's Independent Auditors ............................. 13

               e)    The Special Committee Waived Privilege by Disclosure to McAfee's Board of Directors ........................................... 13

          4.    Roberts Does Not Need to Demonstrate a "Substantial Need" for the Materials Sought, Although Such a Need Exists ................................ 14

     C.    There Is No Need for *In Camera* Inspection of Privilege-Waived Documents ........................................................................ 14

V.    CONCLUSION ........................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**PAGE**

3

**CASES**

4
*Aaron v. SEC,*
446 U.S. 680 (1980) ....................................................................................... 2

5
*Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.,*
237 F.R.D. 618 (N.D. Cal. 2006) (Patel, J.) .......................................... 5, 7

6

7
*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,*
293 F.3d 307 (6th Cir. 2002) ...................................................................... 10

8
*Fox v. Cal. Sierra Fin. Servs.,*
120 F.R.D. 520 (N.D. Cal. 1988) ................................................................. 9

9
*Genentech, Inc. v. U.S. Int'l Trade Comm'n,*
122 F.3d 1409 (Fed. Cir. 1997) ................................................................. 10

10

11
*Hickman v. Taylor,*
329 U.S. 495 (1947) ....................................................................................... 7

12
*In the Matter of Fischel,*
557 F.2d 209 (9th Cir. 1977) ........................................................................ 6

13
*Laser Indus., Ltd. v. Reliant Technologies, Inc.,*
167 F.R.D. 417 (N.D. Cal. 1996) ............................................................... 13

14
*In re McKesson HBOC, Inc. Sec. Litig.,*
2005 WL 934331 (N.D. Cal. 2005) .............................................................. 8

15

16
*McMorgan & Co. v. First Cal. Mortg. Co.,*
931 F. Supp. 703 (N.D. Cal. 2003) .............................................................. 9

17
*Medinol Ltd. v. Boston Scientific Corp.,*
214 F.R.D. 113 (S.D.N.Y. 2002) ............................................................... 13

18
*In re Napster, Inc. Copyright Litig.,*
479 F.3d 1078 (9th Cir. 2007) .............................................................. 12, 13

19
*Permian Corp. v. United States,*
665 F. 2d 1214 (D.C. Cir. 1981) ............................................................ 7, 10

20

21
*In re Qwest Comm. Sec. Litig.,*
450 F.3d 1179 (10th Cir. 2006) ................................................................. 10

22
*Ryan v. Gifford,*
C.A. No 2213, 2007 WL 4259557 (Nov. 30, 2007) ................................. 13

23
*SEC v. Rubera,*
350 F.3d 1084 (9th Cir. 2003) ...................................................................... 2

24
*In re Steinhardt Partners, L.P.,*
9 F.3d 230 (2d Cir. 1993) ........................................................................... 10

25
*United States v. Bergonzi,*
216 F.R.D. 487 (N.D. Cal. 2003) ................................................................. 8

26

27
*United States v. Mass. Inst. of Tech. (MIT),*
129 F.3d 681 (1st Cir. 1997) .................................................................. 7, 10

28

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*United States v. Nobles,*
    422 U.S. 225 (1975) ................................................................................................... 7

*United States v. Reyes,,*
    239 F.R.D. 591 (N.D. Cal. 2006) ......................................................... 7, 8, 9, 10, 11, 14

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ................................................................................................... 7

*Weil v. Investment/Indicators, Research & Mgmt., Inc.,*
    647 F.2d 18 (9th Cir. 1981) ....................................................................................... 7

*Westinghouse Elec. Corp. v. Republic of Philippines,*
    951 F.2d 1414 (3d Cir. 1991) ........................................................................ 7, 10, 11

*In re Worlds of Wonder Sec. Litig.,*
    147 F.R.D. 208 (N.D. Cal. 1992) .............................................................................. 9

**RULES**

Fed.R.Civ.P. 26 ................................................................................................................ 5

Fed.R.Civ.P. 26(b)(1) ............................................................................................. 1, 5, 15

Fed.R.Crim.P. 17(c) .................................................................................................. 9, 14

**OTHER AUTHORITIES**

Section 10(b) of the Securities Exchange Act of 1934 ...................................................... 1

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2008 at 2:00 p.m., before the Honorable Marilyn H. Patel in Courtroom 15 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, defendant Kent H. Roberts ("Roberts") will and hereby does move to compel third party Howrey LLP's ("Howrey") response to Roberts' subpoena *duces tecum* Requests 2, 3 and 9.

Roberts so moves on the grounds that the attorney-client privilege and work product protection that might otherwise apply to the subpoenaed documents have been waived, and the documents are discoverable within the meaning of Fed.R.Civ.P. 26(b)(1).

This motion is based on the following Memorandum, the accompanying Declaration of William S. Freeman, Esq. ("Freeman Decl."), the pleadings on file, and such other materials and argument as may be introduced by the parties.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Nearly two years ago, Howrey, as counsel to a Special Committee of McAfee, Inc.'s Board of Directors (the "Special Committee"), began an extensive internal investigation into the stock option practices that are central to this case. During its investigation Howrey interviewed at least 75 employees and Board members of McAfee, Inc. ("McAfee" or the "Company"). Since then, the McAfee has waived any attorney-client privilege or work product protection that might otherwise attach to these materials by authorizing Howrey to make detailed, voluntary disclosures on behalf of McAfee to numerous parties adverse to McAfee, including: the Securities and Exchange Commission ("SEC"); the Department of Justice ("DOJ"); McAfee's outside auditors; and McAfee directors who were both potential subjects of the investigation and defendants in derivative litigation.

Relying in large part on materials generated by the Howrey investigation, on February 27, 2007, the SEC filed a civil enforcement action against Kent Roberts, the former general counsel of McAfee, alleging violations of Section 10(b) and other provisions of the Securities Exchange

1  Act of 1934.  Scienter – an intent by Roberts to deceive, manipulate or defraud – is an essential

2  element of many of the SEC's claims.  *See Aaron v. SEC*, 446 U.S. 680 (1980) (SEC must

3  establish scienter in a civil enforcement action under Section 10(b)); *see also SEC v. Rubera*, 350

4  F.3d 1084, 1094 (9th Cir. 2003).

5        Roberts now seeks to compel production of the following critical documents:  (1)

6  Howrey's interview notes, memoranda and/or summaries; (2) Howrey's notes of presentations

7  made on behalf of the Special Committee to the Government; and (3) communications between

8  Howrey and McAfee's management, Audit Committee and/or Board.  These documents are

9  relevant to whether Roberts committed the acts of which he is accused, as well as his state of

10  mind; and they are also critical to his ability to impeach the key witnesses against him, most if not

11  all of whom were interviewed by Howrey.

12  **II.    FACTUAL BACKGROUND**

13        On May 30, 2006, McAfee announced that it had terminated Mr. Roberts and that a

14  Special Committee of the Board of Directors had retained independent counsel to assist in its

15  review of its stock option granting practices (hereafter, the "special investigation").  (Freeman

16  Decl., ¶ 2, Ex. A)  On June 9, 2006, McAfee filed a Form 8-K announcing that it had received a

17  subpoena from the SEC pursuant to a formal order of investigation related to the Company's

18  stock option practices.  (*Id.*, ¶ 3, Ex. B.)  McAfee also announced that it intended to cooperate

19  with the SEC.  (*Id.*)

20        On or around August 18, 2006, McAfee announced that it had received a grand jury

21  subpoena from the DOJ relating to the Company's termination of Mr. Roberts, his options-related

22  activities, and the special investigation.  (*Id.*, ¶ 4, Ex. C.)  McAfee noted that it was continuing to

23  cooperate fully with the DOJ.  (*Id.*)

24

25                              **REDACTED**

26

27

28

**REDACTED**

Present at that meeting were at least eight directors who had already been named as defendants in derivative litigation previously filed on behalf of McAfee.  (*Id.*, ¶ 8, Ex. G.)  The next day, McAfee issued a press release announcing that George Samenuk, its Chairman of the Board and Chief Executive Officer, had retired, and that Kevin Weiss, its President, had been terminated.  (*Id.*, ¶ 9, Ex. H.)[1]

**REDACTED**

[2] At the October 10, 2006 meeting, Howrey discussed the involvement of management and Board members in possible wrongdoing relating to options.  (*See id.*, at ¶ 14, Ex. M at 208:14-209:24.)  In addition, during the special investigation, the Special Committee forewarned Mr. O'Leary, a potential subject of the investigation and defendant in derivative litigation, what Howrey would ask him during his interview.  (*See id.*, ¶ 14, Ex. M at 128:9-129:18 and 191:22-192:18.)

**REDACTED**

---

[1] As a result of Howrey's investigation, the Company also determined that it would need to restate historical financial statements to record additional non-cash charges for stock-based compensation expense over a ten-year period, and on December 21, 2007, McAfee released its restated financials, which included additional compensation expense in the amount of $137 million.  (*Id.*, ¶ 10, Ex. I at 5.)

[2] Howrey represents only the Special Committee, not the full Board.  (*See id.*, ¶ 13, Ex. L at 151:19-152:4.)

1

2

3

4

5

6

7                              **REDACTED**

8

9

10

11

12

13                                                        Clearly, Howrey conveyed

14   the substance of its interviews and notes to the Government repeatedly to curry favor with the

15   Government.

16          In February 2007, the SEC and the DOJ filed parallel civil and criminal actions against

17   Mr. Roberts.

18          In order to adequately defend himself, Roberts subpoenaed Howrey's investigative

19   materials.  (Freeman Decl., ¶ 17, Ex. P.)  On November 19, 2007, Howrey provided a written

20   response, objecting to Requests 2, 3, and 9, asserting that the documents called for by those

21   Requests were subject to the attorney-client privilege and/or the work product doctrine.  (*Id.*, ¶

22   18, Ex. Q.)  Despite numerous subsequent discussions and written communications between

23   Roberts' counsel and Howrey, Howrey persisted in these objections.  The parties, together with

24   counsel for the SEC and McAfee, appeared before this Court by telephonic hearing on January

25   30, 2008, at which time the Court requested further briefing and set the matter for hearing on

26   February 25, 2008.[3]

27   _____

28   [3] In the course of the following argument, we refer on occasion to matters that transpired during
     the telephonic hearing.  A transcript has been ordered but is not yet available.

## III.   REQUESTS AND DOCUMENTS IN DISPUTE

Howrey objected to the following requests as overbroad[4] and claimed the documents are

protected from disclosure by the attorney-client privilege and/or work product doctrine:

- REQUEST #2: ALL DOCUMENTS, including, but not limited to, memoranda, analysis, conclusions, findings, notes, interview memoranda OR summaries prepared, in whole OR in part, by YOU in connection with ANY work performed for the COMPANY during the time period of May 15, 2006 to the present.

- REQUEST #3: ALL COMMUNICATIONS between YOU OR the COMPANY with the Department of Justice ("DOJ"), Securities and Exchange Commission ("SEC"), OR New York Stock Exchange ("NYSE") RELATED TO stock options.

- REQUEST #9: ALL DOCUMENTS created by YOU in connection with, OR that formed ANY part of the basis of, ANY representation by YOU to the DOJ, SEC OR NYSE, whether written OR oral RELATED TO stock options.

(*Id.*, ¶¶ 17-18, Ex. P and Q.)

Howrey has produced a privilege log that demonstrates that Howrey is withholding 75

documents comprising interview notes or memoranda, notes of meetings or communications with

board members and notes of meeting or calls with the SEC and DOJ. (*Id.*, ¶ 19, Ex. R.)

## IV.   ARGUMENT

### A.   Roberts Is Entitled to Production of Howrey's Documents Because the Information He Seeks Is Crucial to the Preparation of His Case.

#### 1.   The Federal Rules of Civil Procedure Give Roberts Broad Latitude to Take Discovery from McAfee.

Rule 26 of the Federal Rules of Civil Procedure affords parties broad latitude to seek

discovery and should be liberally construed. *See Bd. of Trustees of Leland Stanford Jr. Univ. v.*

*Roche Molecular Sys., Inc.* ("*Stanford*"), 237 F.R.D. 618, 621 (N.D. Cal. 2006) (Patel, J.).

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or

defense of any party." Fed. R. Civ. P. 26(b)(1). The information need not be admissible as long

as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

#### 2.   The Information Roberts Seeks Is Critical to His Defense.

The subpoenaed materials pertain to McAfee's internal investigation into the very

---

[4] Roberts has no reason to believe that the overbreadth argument continues to be asserted by Howrey. If it is, Roberts will address it in a short reply memorandum.

1   activities that now form the basis of the SEC's complaint against Roberts.  Though the

2   Government has enjoyed regular communications with Howrey regarding its investigation and

3   interviews, Howrey has denied Roberts the same information.  Among other things, this

4   information may well demonstrate that McAfee, through its finance and human resources

5   departments and through its Board of Directors, frequently modified and repriced option grants;

6   and that Terry Davis, McAfee's controller at the time, participated in such modifications.  (Mr.

7   Davis is alleged by the SEC to have participated with Mr. Roberts in the modification of an

8   option grant to Mr. Roberts).

9           Given the acknowledged complexity of the applicable accounting rules, such evidence

10  may powerfully suggest that Roberts had every reason to believe that modifications of options

11  was common and acceptable; that Mr. Davis was authorized to do so; and that he was the person

12  who would ensure appropriate accounting treatment.  The interview notes withheld by Howrey

13  may also assist Roberts in identifying individuals with knowledge of McAfee's stock options and

14  accounting practices.  These notes, and the notes of what Howrey shared with the Government,

15  may relate to credibility of key witnesses because they may reveal inconsistencies in testimony

16  and/or a motivation to testify in a certain manner.[5]

17      **B.      McAfee Waived the Attorney-Client Privilege and Work Product Doctrine**
             **With Respect to the Information Provided to the Government and Other**
18           **Adversaries.**

19              **1.      The Attorney-Client Privilege and Work Product Doctrine.**

20          The attorney-client privilege shields from disclosure any communications made in

21  confidence by a client to an attorney for the purpose of seeking professional legal advice.  *In the*

22  *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).  The attorney-client privilege applies in the

23  _____

24  [5] During the telephone hearing on January 30, Howrey argued that Roberts is not entitled to the
     interview notes because Roberts has the ability to depose the 75 witnesses it interviewed.  This
25  argument ignores the fact that certain witnesses are no longer available; memories have faded;
     and that Roberts and the SEC together are limited to 30 depositions in this case.  Moreover,
26  witnesses who have been deposed have uniformly been instructed not to testify as to *what they*
     *themselves told the Special Committee* on the specious grounds that such disclosures are
27  privileged.  (Freeman Decl., ¶¶ 13, 14, 20, Exs. L at 24:11-23, M at 190:23-191:5, S at 115:16-
     116:5.)  Moreover, witnesses may testify differently during an internal investigation than when
28  they are deposed under oath while the SEC is present, or at trial.

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY HOWREY LLP
CASE NO. C-07-4580 MHP

1  context of a corporation as well, protecting the communications of both corporate officers and

2  employees. *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981).  The work product

3  doctrine safeguards "written statements, private memoranda and personal recollections prepared

4  or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*,

5  329 U.S. 495, 510 (1947).

6             **2.     Both Privileges Can Be Waived by Disclosure to Adverse Third Parties**.

7        Both privileges can be waived.[6]  A party can waive the attorney-client privilege upon the

8  voluntary disclosure of protected information by a client, or by an attorney at the behest of a

9  client. *See, e.g., Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir.

10  1981).  When waiver has occurred, it extends to "all communications on the same subject matter

11  … so that a party is prevented from disclosing communications that support its position while

12  simultaneously concealing communications that do not." *Stanford*, 237 F.R.D. at 625 (citations

13  and internal quotes omitted).  In addition, a party can waive attorney work-product protection

14  when an attorney attempts to use the work product as testimony or evidence, or reveals it to an

15  adversary to gain an advantage in litigation. *See United States v. Nobles*, 422 U.S. 225, 239-40

16  (1975); *see also Stanford*, 237 F.R.D. at 622.

17        The logic compelling a finding of waiver is simple, and was succinctly set forth by Judge

18  Breyer in *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) (full internal citations

19  inserted):

> Parties "cannot be permitted to pick and choose" in their disclosure
> of protected communications, "waiving the privilege for some and
> resurrecting the claim of confidentiality to obstruct others."
> *Permian Corp. v. United States*, 665 F. 2d 1214, 1221 (D.C. Cir.
> 1981).  Such arbitrary invocation of the privileges is inappropriate
> both because it bears no relationship to their purpose, which is to
> ensure that clients can consult frankly with their attorneys and that
> attorneys can prepare their cases effectively, and because it smacks
> of injustice when, as in this case, the favored party seizes on upon
> the disclosed information to exercise legal leverage against the

---

[6] While the work-product doctrine is not technically a "privilege," it is often referred to as such
for convenience, and the criteria for waiver are equivalent. *Stanford*, 237 F.R.D. at 621 n.2, 623
n.3.

obstructed one. *Id.; see also United States v. MIT,* 129 F.3d 681, 684-85; *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1425-26 & n.13.

### 3.   Howrey's Repeated Disclosures to McAfee's Adversaries Constituted Waiver.

The situation before this Court is even more compelling than that before Judge Breyer in *United States v. Reyes,* 239 F.R.D. 591 (N.D. Cal. 2006). Reyes, the former CEO of Brocade, was sued by the SEC and indicted by the DOJ for alleged options backdating. Brocade's Audit Committee had undertaken an extensive internal investigation through two outside law firms, and had shared the results of that investigation orally with the SEC and the DOJ. Unlike this case, however, Brocade had not shared its investigation with adverse parties in derivative litigation, and there was no showing that Brocade had shared the investigation with potentially adverse board members or auditors.

Nonetheless, Judge Breyer found that counsel's oral disclosures of the results of their investigation constituted a waiver of work product and attorney-client privilege with respect to counsel's (1) memos, summaries and notes of witness interviews, (2) reports or notes of presentations to the SEC or DOJ, and (3) notes, memos, comments or conclusions made in connection with the internal investigation related to any option grant to any employee. 239 F.R.D. at 602. As Judge Breyer observed, "every appellate court that has considered the issue in the last twenty-five years" has concluded that the holder of a privilege cannot re-assert the privilege after having waived it in another context. *Reyes,* 239 F.R.D. at 603.

Other courts in this District have also found waiver in similar situations. In *United States v. Bergonzi,* 216 F.R.D. 487 (N.D. Cal. 2003), Judge Jenkins found waiver when third-party McKesson shared its investigation report and backup materials with the Government, even though it had entered into "confidentiality agreements" with the government agencies. The court noted that the Government and McKesson did not share a common interest and that McKesson did not meet their burden of establishing that the Government was not an adversary.[7] *See also,*

_____

[7] In *In re McKesson HBOC, Inc. Sec. Litig.,* 2005 WL 934331, *9 (N.D. Cal. 2005), Judge Whyte, on similar facts, found that the presence of confidentiality agreements between McKesson

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY HOWREY LLP
CASE NO. C-07-4580 MHP

1   *McMorgan & Co. v. First Cal. Mortg. Co.*, 931 F. Supp. 703, 707-10 (N.D. Cal. 2003) (finding a

2   waiver of attorney client privilege and work product protection where information was selectively

3   disclosed to a potential adversary without an attempt by counsel to protect it); *In re Worlds of*

4   *Wonder Sec. Litig.*, 147 F.R.D. 208, 211-12 (N.D. Cal. 1992) (concluding that a company waived

5   work product immunity when it informally produced documents to the SEC to forestall

6   enforcement action); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 527 (N.D. Cal. 1988)

7   (finding waiver of attorney client privilege where counsel voluntarily produced documents and

8   testified to the SEC).

9           **a)       The Doctrine of Waiver Applies Even More Powerfully to Civil
10                        Cases Than to Criminal Cases.**

11          During the telephonic hearing on January 30, 2006, the Court expressed concern that

12  *Reyes* might not be controlling because it involved a criminal case, in which the need for work

13  product might be controlled by the Confrontation Clause of the Sixth Amendment.  Roberts

14  respectfully submits, however, that the reverse is actually true:  waiver leads to disclosure of

15  relevant information *more automatically in civil cases than in criminal cases.*

16          In *Reyes*, Judge Breyer's ruling was not based on Sixth Amendment concerns.  In fact, his

17  ruling was that the subpoenaed materials were *not* immediately producible because under

18  Fed.R.Crim.P. 17(c), it was required that they be not only *relevant* but also *admissible,* and since

19  much of the material was clearly single or multiple hearsay, it could only be admissible, if at all,

20  for impeachment in the event a witness testified inconsistently at the trial.  239 F.R.D. at 599-601.

21  Accordingly, the court ordered the materials submitted for *in camera* review so that they could be

22  produced, as necessary, if and when certain witnesses testified in the criminal trial.  *Id.* at 602.

23          In *Reyes*, Judge Breyer clearly signaled that in a civil case, where discoverability hinges

24

25  and the Government resuscitated the privilege, but noted that disclosure to plaintiffs' counsel in
    private litigation would result in waiver.  Because McAfee has also disclosed Howrey's
26  investigation to derivative plaintiffs' counsel, waiver would exist even under Judge Whyte's
    analysis.  Roberts respectfully submits, however, that Judge Breyer's analysis of the
27  "confidentiality agreements" is the correct one.  In *Reyes,* Judge Breyer found waiver despite the
    existence of such agreements, calling them "little more than fig leafs" because they didn't give
28  Brocade any real power to prevent further dissemination.  239 F.R.D. at 603.

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY HOWREY LLP
CASE NO. C-07-4580 MHP

1  on *relevance* and is not burdened by the Rule 17(c) requirement of *admissibility,* materials as to

2  which privilege had been waived would clearly be ordered to be produced. *Id.* at 599-600.

3  ("Admittedly, Reyes has requested relevant materials … There can be no dispute that any

4  summaries, notes, memoranda, and reports generated by [counsel] are germane to his criminal

5  prosecution. … Reyes' stumbling block, however, is admissibility.")

6      Moreover, the reported appellate decisions do not suggest that waiver should be more

7  stringently enforced in civil cases.  Indeed, among the circuit court decisions cited by Judge

8  Breyer in *Reyes*, the vast majority involved subsequent *civil* litigation. *See, e.g., In re*

9  *Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 307 (6th Cir. 2002) (finding

10 waiver of attorney-client and work product in civil case involving healthcare billing practices

11 after corporation produced documents to the DOJ); *United States v. Mass. Inst. of Tech. (MIT)*,

12 129 F.3d 681, 684-86 (1st Cir. 1997) (finding waiver in civil IRS proceeding after MIT disclosed

13 records to the Department of Defense); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d

14 1409, 1415-18 (Fed. Cir. 1997) (finding waiver in ITC proceeding after inadvertent disclosure in

15 civil patent proceedings); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234-36 (2d Cir. 1993)

16 (finding waiver in securities class action after partnership shared investigation memo with the

17 SEC); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-26 (3d Cir.

18 1991) (finding waiver in tort case after corporation orally presented its findings to the SEC and

19 DOJ and allowing the DOJ to view protected materials); *Permian Corp. v. United States*, 665

20 F.2d 1214, 1220-22 (D.C. Cir. 1981) (finding waiver in Department of Labor investigation after

21 corporation had provided documents to the SEC); *see also In re Qwest Comm. Sec. Litig.*, 450

22 F.3d 1179 (10th Cir. 2006) (finding waiver in private securities litigation after corporation shared

23 documents with SEC and DOJ).

1

b)    **Howrey's Arguments Against a Finding of Waivers Are Unavailing.**

2

During the Court's telephonic hearing, Howrey argued that it did not waive any privilege

3

because it did not disclose *the notes themselves* in written form to any third party.[8]  Such a

4

distinction lacks merit.  As Judge Breyer explained in *Reyes*, 239 F.R.D. 591, 604 (N.D. Cal.

5

2006):

6

> This Court finds this argument specious.  It makes no difference
> whether a privilege-holder copies a written text, reads from a

7

> written text, or describes a written text to an outside party.  The
> purpose and effect is the same in all cases; the transmission of

8

> privileged information is what matters, not the medium through
> which it is conveyed.

9

*See also Westinghouse*, 951 F.2d at 1423-26 (finding waiver of both privileges when corporation

10

*orally* presented its findings to the SEC and DOJ and allowed the DOJ to view protected

11

materials in civil case).

12

Moreover, Howrey's position is based on several propositions that defy logic.  First,

13

Howrey would have this Court believe that it interviewed 75 witnesses over many months and

14

took notes of their testimony, but then memorized the testimony such that they never needed to

15

refer to it during the course of their extensive cooperation sessions.  In addition, this position is

16

undercut by prior deposition testimony of Messrs. Gooding and Darmer.

17

Second, Howrey appears to be suggesting that nowhere, ever, did it actually do any

18

*thinking* or *processing of raw information,* nor did it ever *reach any conclusions.*  The only

19

documents produced by Howrey to date, including the "236 page power point" presentation that it

20

advertises so prominently, are nothing more than collections and digests of source documents

21

such as emails, journal entries and board minutes.  Conspicuously absent from the materials

22

produced to date are any materials that suggest what the Howrey investigators – who were paid

23

nearly $14 million for their work product (Freeman Decl., ¶ 10, Ex. I at 70) – actually *thought*

24

about the raw data they reviewed and the statements made by their 75 interviewees.    They

25

obviously reached *some* conclusions about who did what, and with what state of mind, because,

26

---

27

[8] In fact, even written work product and attorney client communication conveying the substance
of personnel interviews was produced to the DOJ and Mr. Roberts.  (*See* Freeman Decl., ¶ 22, Ex.

28

T)

1   among other things, the McAfee board, after hearing a download from Howrey, asked the

2   company's CEO, George Samenuk, to resign and fired its President, Kevin Weiss.

3                                            **REDACTED**

4

5           It should be obvious that Howrey was not hired to merely find documents, make copies

6   and run a highlighter over the key sections, or to interview witnesses and report blandly on what

7   they said; it was paid to *analyze,* to *make connections* between disparate pieces of data in a

8   complex mosaic, and to *reach conclusions.* Even if they had not been explicitly hired to do so –

9   which is highly doubtful– Government investigators and outside auditors almost certainly asked

10  them to do so.  SEC and DOJ enforcement personnel, as well as outside auditors, routinely ask

11  company investigators to tell them what particular witnesses said about particular documents, and

12  to draw conclusions about the conduct or veracity of particular witnesses.  (*Id.,* ¶ 21)

13          It is virtually certain that Howrey reached and conveyed observations and conclusions, but

14  it is equally clear that those conclusions and observations are not contained in the documents

15  produced by Howrey to date.  Rather, they appear to be buried in the documents Howrey now

16  seeks to prevent Roberts from seeing.  Although Howrey may claim its internal documents

17  themselves were not physically handed to the Government and others, there can be no question

18  that their substance was orally shared.

19          c)      **The *Napster* Case Does Not Preclude a Finding of Waiver Here.**

20          During the telephone hearing, the Court expressed concern that the Ninth Circuit's ruling

21  in *In re Napster, Inc. Copyright Litig.,* 479 F.3d 1078 (9th Cir. 2007) might preclude a finding of

22  waiver.

23          Roberts respectfully submits that *Napster* is not controlling because it addressed an

24  entirely different issue: the crime-fraud exception to the attorney-client privilege.  The two

25  questions addressed by the Ninth Circuit in the *Napster* case both involved the proper procedures

26  for determining whether otherwise attorney-client privileged information should be disclosed

27  under the crime-fraud exception to the privilege: (1) whether the district court should consider not

28  only the evidence adduced by the party seeking disclosure, but also the evidence of the party

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY HOWREY LLP
CASE NO. C-07-4580 MHP

1    seeking to preserve the privilege; and (2) the applicable burden of proof in a civil case for the

2    party seeking to establish the crime-fraud exception. *Id.* at 1091, 1098.

3       *Napster*, however, did not involve any issue of waiver. Whereas waiver of a privilege

4    involves the relinquishment of a known right, the crime-fraud exception is based on the notion

5    that the right or privilege never attached in the first place. *Id.* at 1090; *see also Laser Indus., Ltd.*

6    *v. Reliant Technologies, Inc.,* 167 F.R.D. 417, 422 (N.D. Cal. 1996) (illustrating that a waiver

7    entails losing a privilege whereas in the crime-fraud exception the privilege never attaches). Even

8    though the Ninth Circuit has not directly addressed the waiver issue, the uniform rulings of sister

9    circuits leave no doubt that *Napster* does not preclude a finding of waiver here.

10
11         d)    **The Special Committee Also Waived Privilege by Disclosure to**
                     **McAfee's Independent Auditors**.

12       Though Howrey's disclosure of the contents of its investigative materials to the

13    Government is sufficient to waive any protections that might otherwise have attached, McAfee's

14    Special Committee also waived these protections by disclosing its conclusions to PWC and

15    Deloitte, McAfee's former and current auditors. *See Medinol Ltd. v. Boston Scientific Corp.*, 214

16    F.R.D. 113, 116 (S.D.N.Y. 2002) (finding disclosure of meeting minutes to outside auditors

17    waived work product protection because the disclosure was not for litigation purposes and that

18    independent auditors "must not share a common interest with the company they audit").

19         e)    **The Special Committee Waived Privilege by Disclosure to**
                     **McAfee's Board of Directors**.
20

21       An additional basis for a finding of waiver is Howrey's undisputed sharing of the

22    substance of its interview notes, investigative analysis and findings with McAfee's Board,

23    including individual defendants in a derivative lawsuit related to the very stock option activities

24    the Special Committee investigated. In *Ryan v. Gifford*, C.A. No 2213, 2007 WL 4259557, *3

25    (Nov. 30, 2007), a derivative suit arising out of alleged option backdating, the Delaware

26    Chancery court found that a special committee waived the attorney-client privilege as to all

27    communications between the special committee and its counsel when it shared its presentation

28    with the company's full Board. The court found that the special committee and the director

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY HOWREY LLP
CASE NO. C-07-4580 MHP

defendants did not share a common interest, given that the special committee was formed in order to investigate alleged wrongdoing in response to litigation in which certain directors were named as individual defendants. *Id.*

### 4. Roberts Does Not Need to Demonstrate a "Substantial Need" for the Materials Sought, Although Such a Need Exists.

In its letter to the Court dated January 28, 2008, Howrey argued that Roberts is not entitled to production of the materials sought because he "cannot demonstrate a 'substantial need'" for them. During the telephonic hearing, the Court also questioned Roberts' need for these materials, since he can take the depositions of at least some of the witnesses that Howrey interviewed. Roberts respectfully submits, however, that a showing of "substantial need" – which is the normal standard when a party seeks discovery of the opponent's work product – is not required where a waiver has occurred. In *Reyes*, in fact, Judge Breyer specifically found that "Reyes has made no showing … that the information contained in the subpoenaed materials is otherwise unavailable to him," but ruled that because of waiver by disclosure to the Government, "the Court finds these privileges pose no obstacle to Reyes' attempt to subpoena them." 239 F.R.D. at 602.

### C. There Is No Need for *In Camera* Inspection of Privilege-Waived Documents.

Finally, during the telephonic hearing, the Court expressed some concern that a finding of waiver might create a need for *in camera* inspection of documents being withheld by Howrey. Roberts respectfully suggests that such inspection is not necessary. Once waiver has been established, relevant evidence is discoverable.

In *Reyes,* the court suggested *in camera* review only because despite the finding of waiver, relevance alone was not sufficient to require broad production under Fed.R.Crim.P. 17. Rather, the court had to be satisfied that the particular documents sought might potentially be admissible to impeach particular Government witnesses, in the event they testified. 239 F.R.D. at 601. No such issue exists here.

1  **V.    CONCLUSION**

2          Under settled law, Roberts is entitled to the information sought because McAfee, through

3  its Special Committee, waived the attorney-client privilege and work product doctrine.  The broad

4  discovery available to parties under Fed.R.Civ.P. 26(b)(1) makes discovery of privilege-waived

5  materials even more automatic in civil cases.  For all of the reasons set

6  forth above, the Court should grant Roberts' motion to compel.

7  Dated: February 15, 2008                COOLEY GODWARD KRONISH LLP
                                            STEPHEN C. NEAL (170085)
8                                           WILLIAM S. FREEMAN (82002)
                                            SHANNON M. EAGAN (212830)
9                                           EINAT SANDMAN CLARKE (234776)

10

11                                          _____/s/_____
                                            Einat Sandman Clarke (234776)
12

13                                          Attorneys for Defendant
                                            Kent H. Roberts
14
   767697 v4/PA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY HOWREY LLP
CASE NO. C-07-4580 MHP