# EXHIBIT I



# FORM 10-K

## McAfee, Inc. - MFE

**Filed: December 21, 2007 (period: December 31, 2006)**

Annual report which provides a comprehensive overview of the company for the past year

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

# Form 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the Fiscal Year Ended December 31, 2006

**or**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the Transition Period from _____ to _____

**Commission File Number: 001-31216**

# McAfee, Inc.
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **77-0316593** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification Number)* |
| **3965 Freedom Circle** | **95054** |
| **Santa Clara, California** | *(Zip Code)* |
| *(Address of principal executive offices)* | |

**Registrant's telephone number, including area code:**
**(408) 988-3832**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common stock, par value $0.01 per share and related Preferred Share Purchase Rights | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act:**
**None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐    No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐    No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☐    No ☑

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):
Large accelerated filer ☑    Accelerated filer ☐    Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐    No ☑

The aggregate market value of the voting stock held by non-affiliates of the issuer as of the last business day of the Registrant's most recently completed second fiscal quarter (June 30, 2006) was approximately $3.9 billion. The number of shares outstanding of the issuer's common stock as of December 7, 2007 was 159,908,615.

**DOCUMENTS INCORPORATED BY REFERENCE**

None.

Source: McAfee, Inc., 10-K, December 21, 2007

Table of Contents

presentation, our chairman and chief executive officer retired and our president was terminated. The board determined this termination was a termination for cause.

The special committee investigation was completed in November 2007. The special committee concluded that there were both qualitative issues and accounting and administrative errors relating to our stock option granting process. In this regard, the special committee concluded that certain former members of management had acted inappropriately, giving rise to qualitative concerns. The qualitative concerns included the following:

- in the case of our former general counsel, he and a former member of management participated in intentionally modifying one of the former general counsel's stock option grants so as to create a lower exercise price, and the former general counsel failed to disclose this unauthorized change to the board of directors prior to late May 2006;
- in some instances, former members of management drafted corporate records, including employment documentation, board and compensation committee meeting minutes and actions by unanimous written consent, with the benefit of hindsight so as to choose measurement dates giving more favorable exercise prices, moreover, certain of these documents were used by us in making accounting determinations with respect to stock-based compensation;
- during the course of the investigation, certain former members of management did not provide completely accurate or consistent information and in one case, provided documentation to the special committee that the special committee determined was intentionally altered; and
- certain former members of senior management did not display the appropriate oversight and "tone at the top" expected by the board of directors.

In addition to the foregoing, the special committee concluded that certain stock option awards were previously accounted for using incorrect measurement dates because: (i) we had previously determined accounting measurement dates for certain stock option awards incorrectly, and, in some instances, such dates were chosen with the benefit of hindsight so as to intentionally, and not inadvertently or as a result of administrative error, give more favorable exercise prices, (ii) the key terms for a substantial portion of the grants in an annual merit grant had been determined with finality prior to the original measurement date, with a reduction in the exercise price on the original measurement date, which represented a repricing, (iii) original accounting measurement dates occurred prior to approval dates, (iv) original accounting measurement dates occurred prior to employment commencement dates, (v) approval and employment commencement date documentation was incorrect or inconsistent and (vi) certain director grants contained clerical errors.

As a result of these findings, we have restated our consolidated financial statements to properly reflect the correction of these errors. During this restatement, we also corrected other known errors.

To correct our past accounting for stock options under Accounting Principles Board Opinion No. 25 *"Accounting for Stock Issued to Employees"* ("APB 25"), we recorded additional pre-tax, non-cash, stock-based compensation expense totaling $137.4 million, including of $3.4 million ($2.5 million, net of tax) for the year ended December 31, 2005, $10.8 million ($7.2 million, net of tax) for the year ended December 31, 2004 and $123.1 million ($80.5 million, net of tax) for the periods 1995 through 2003. We also expect to amortize less than $0.1 million of such pre-tax charges under Statement of Financial Accounting Standards No. 123(R) *"Share-Based Payment"* ("SFAS 123(R)"), in periods from January 1, 2007 through 2009.

5

Source: McAfee, Inc., 10-K, December 21, 2007

Table of Contents

general and administrative expenses, partially offset by (i) a $2.8 million decrease in costs incurred to comply with Section 404 of the Sarbanes-Oxley Act, (ii) a $0.9 million decrease in expense related to uncollectible accounts receivable, and (iii) a $0.4 million decrease due to the Japanese Yen weakening against the U.S. Dollar in 2006 compared to 2005.

The decrease in general and administrative expenses from 2004 to 2005 reflected (i) a $6.5 million decrease in costs incurred to comply with Section 404 of the Sarbanes-Oxley Act, (ii) a $4.4 million decrease in stock-based compensation and (iii) decreased average headcount dedicated to general and administrative activities. Also, in 2004. we had (i) $2.9 million in consulting fees paid in connection with strategic planning, (ii) fees incurred in the divestiture of Sniffer and (iii) increased legal fees due to our investigation into our accounting practices that commenced in March 2002 and merger and acquisition activity. The remaining decrease was attributable to general cost reduction efforts.

*Amortization of intangibles*

The following table sets forth, for the periods indicated, a comparison of the amortization of intangibles.

| | 2006 | 2005 | 2006 vs. 2005 | | 2004 | 2005 vs. 2004 | |
| | | (As restated) | $ | % | (As restated) | $ | % |
| | | | (Dollars in thousands) | | | | |
| Amortization of intangibles | 10,682 | 12,834 | (2,152) | (17)% | 14,235 | (1,401) | (10)% |

Intangibles consist of identifiable intangible assets such as trademarks, patents and customer lists. The decreases in amortization of intangibles are attributable to older intangibles becoming fully amortized in 2006 and 2005. In connection with our current year acquisitions we acquired $9.7 million in intangible assets $8.4 million of these intangible assets were acquired in the fourth quarter of 2006 and thus did not impact our consolidated income statement significantly during the current year.

*SEC and compliance costs*

The $17.8 million of SEC and compliance costs in 2006 included $3.9 million related to independent consultants engaged to examine and recommend improvements to our internal controls to ensure compliance with federal securities laws as required by our previous settlement with the SEC and $13.9 million related to the investigation into our stock option granting practices.

*Restructuring charges*

The following table sets forth, for the periods indicated, a comparison of our restructuring charges.

| | 2006 | 2005 | 2006 vs. 2005 | | 2004 | 2005 vs. 2004 | |
| | | (As restated) | $ | % | (As restated) | $ | % |
| | | | (Dollars in thousands) | | | | |
| Restructuring charges | 470 | 3,782 | (3,312) | (88)% | 17,442 | (13,660) | (78)% |

In the fourth quarter of 2006 we initiated certain restructuring actions designed to realign our go-to-market model with our customers' requirements and product offerings. As a result, we recorded a restructuring charge of $2.4 million related to a reduction in headcount of 75 employees. These actions were taken to reduce our cost structure and, at the same time, enable us to invest in certain strategic growth initiatives in an effort to enhance our competitive position. These actions were completed during the first quarter of 2007. Accretion on prior year restructurings totaled $0.6 million. Offsetting these charges is a reduction of $2.5 million due to revision of prior year estimates related to certain leased properties and other costs.

We recorded restructuring charges in 2005, 2004 and 2003 related to vacating several facilities and reductions in headcount. See further information on these actions in Note 9 to our consolidated financial statements included elsewhere in this report.

Source: McAfee, Inc., 10-K, December 21, 2007