| | |
|---|---|
| 1 | Robert E. Gooding, Jr. (SBN 50617) |
| | Roman E. Darmer (SBN 212578) |
| 2 | Helen Chae MacLeod (SBN 206618) |
| | HOWREY LLP |
| 3 | 4 Park Plaza, Suite 1700 |
| | Irvine, CA 92614 |
| 4 | Telephone: (949) 721-6900 |
| | Facsimile: (949) 721-6910 |
| 5 | Email: goodingr@howrey.com |
| | Email: darmerr@howrey.com |
| 6 | Email: macleodh@howrey.com |

7  Attorneys for HOWREY LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) Case No. C-07-4580 MHP |
| | ) |
| Plaintiff, | ) **NON-PARTY HOWREY LLPS' REPLY** |
| | ) **MEMORANDUM OF POINTS AND** |
| vs. | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **OPPOSITION TO DEFENDANT KENT H.** |
| KENT H. ROBERTS, | ) **ROBERTS' REQUEST FOR PRODUCTION** |
| | ) **OF ATTORNEY NOTES** |
| Defendant. | ) |
| | ) Hearing Date: February 25, 2008 |
| | ) Time: 2:00 p.m. |
| | ) Courtroom: 15 |
| | ) Judge: Hon. Marilyn H. Patel |

HOWREY LLP

NON-PARTY HOWREY'S REPLY ISO OPPO. TO ROBERTS' REQUEST FOR PROD. OF ATTORNEY NOTES
Case No. C-07-4580 MHP
DM_US:21038920_5

## INTRODUCTION

At the February 25, 2008 hearing on Defendant Kent H. Roberts' motion to compel production of non-party Howrey LLP's notes from an internal investigation into potential stock option backdating, this Court identified the significant public policy implications that would follow from finding a broad waiver of the attorney-client and attorney work product privileges where a Special Committee of outside directors has attempted to preserve the privilege but still share the *factual* results of its investigation with the government and outside auditors. As discussed below, finding a blanket, open-ended waiver on the facts of this case would be contrary to the longstanding, strong public policy of encouraging corporations to share information with their auditors and, where appropriate, with the government, in order to detect, root out and prevent corporate fraud.

## ARGUMENT

### A. The Limited Factual Disclosures to McAfee's Auditors Did Not Constitute Waiver.

As indicated at the February 25 hearing, the extent of Howrey's disclosures to McAfee's outside auditors was limited to answering questions or confirming specific factual information contained in the PowerPoint or Source Binders (which consisted of non-privileged source documents), as well as responding to specific questions about what certain witnesses said about those non-privileged documents. Those disclosures neither constituted a waiver of the privilege nor justify production of Howrey's work product because they did not "substantially increase[] the opportunity for potential adversaries to obtain the information." *Merrill Lynch & Co. v. Allegheny Energy, Inc.* is directly on point. *See* 229 F.R.D. 441 (S.D.N.Y. 2004).

In *Merrill Lynch*, the court was asked to find a waiver of work product protection when two written reports arising out of an internal investigation were disclosed to the brokerage company's outside auditors. Merrill Lynch had provided the reports to its outside auditors to enable them to "identify any potential internal control, accounting or audit issues of which [the auditor] was not already aware based on [its] routine and regular prior discussions with Merrill Lynch during the course of the audit." *See id.* at 444. The court held that the disclosure did not constitute a waiver because the mere fact that an auditor has a duty to review a company's records and exercise independence does not, without more, place the auditors in a "tangible adversarial relationship" with its client:

HOWREY LLP

-1-
NON-PARTY HOWREY'S REPLY ISO OPPO. TO ROBERTS' REQUEST FOR PROD. OF ATTORNEY NOTES
Case No. C-07-4580 MHP
DM_US:21038920_5

> [A]ny tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and bookkeeping practices simply is *not* the equivalent of an adversarial relationship contemplated by the work product doctrine. Nor should it be. A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud. Indeed, this is precisely the type of limited alliance that courts should encourage. For example, here Merrill Lynch complied with [the auditors'] request for copies of the internal investigation reports so that the auditors could further assess Merrill Lynch's internal controls, both to inform its audit work and to notify the corporation if there was a deficiency.

*See id.* at 448 (emphasis added). In addition, because auditors have an ethical and professional obligation to maintain the confidentiality of materials received from their clients, except where the law or accounting standards require disclosure, the *Merrill Lynch* court correctly reasoned that the auditors could not be "conduits to potential adversaries" with respect to the contents of the materials. *See id.*

The majority of courts addressing this issue have reached the same conclusion.[1] Indeed, the *Merrill Lynch* court distinguished *Medinol Ltd. v. Boston Scientific Corp.* — the sole case cited by Roberts on this issue — on the ground that the standard for finding waiver focuses on the existence of an adversarial relationship, *not* on an alignment of interests between the company and its outside auditors. *See id.* at *446-47; *see also In Re JDS Uniphase Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 76169, at *10 (N.D. Cal. 2006) (disagreeing with *Medinol* court's view that auditors' interests are not aligned with the company).

The facts here are analogous to those in *Merrill Lynch*. McAfee's auditors were provided purely factual information about the internal investigation so that they could assess McAfee's stock option granting process, McAfee's internal controls, the correct accounting for option grants, and the

---

[1] *See U.S. v. Textron Inc.*, 507 F. Supp. 2d 138, 152-53 (D.R.I. 2007) ("only disclosures that are inconsistent with keeping the information from an adversary constitute a waiver"); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006) (distinguishing scenario where party seeking work product protection "deliberately disclose[s] work-product in order to gain a tactical advantage or . . . ma[kes] testimonial use of work-product and then attempt[s] to invoke the work-product doctrine to avoid cross-examination"); *In Re JDS Uniphase Corp. Sec. Litig*, 2006 U.S. Dist. LEXIS 76169, at *10 (N.D. Cal. 2006) (disagreeing with *Medinol*); *In Re Raytheon Sec. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003) (no evidence that materials disclosed to auditor were likely to be turned over to the company's adversaries, except to the extent required by securities laws and/or accounting standards); *Samuels v. Mitchell*, 155 F.R.D. 195, 200-01 (N.D. Cal. 1994) (company and its counsel kept all communications with auditor confidential and took steps to guarantee that documents would not be given to an adversary); *In Re Pfizer Inc. Sec. Litig.*, 1993 U.S. Dist. LEXIS, at *21 (S.D.N.Y. Dec. 23, 1993) (auditors are "not reasonably viewed as a conduit to a potential adversary").

HOWREY LLP

-2-
NON-PARTY HOWREY'S REPLY ISO OPPO. TO ROBERTS' REQUEST FOR PROD. OF ATTORNEY NOTES
Case No. C-07-4580 MHP
DM_US:21038920_5

need for any remedial measures such as restatement of McAfee's historical financial statements.[2] In other words, as in *Merrill Lynch*, McAfee's auditors received the factual information "both to inform [their] audit work and to notify the corporation if there was a deficiency" and nothing more. *See* 229 F.R.D. at 448. In addition, there are no facts to suggest that McAfee's auditors could disclose, or actually have disclosed, protected information to any third party. Thus, there is no basis on which to conclude that the limited disclosures to McAfee's auditors constituted a waiver, much less that there was either a "tangible adversarial relationship" or that they were a "conduit to potential adversaries."

The *Merrill Lynch* holding that disclosure to auditors does not amount to a waiver is wholly consistent with the settled public policy of promoting voluntary internal investigation by corporations and self-reporting of potential fraud or improper activity. As the *Merrill Lynch* court observed:

> [t]o construe a company's auditor as an adversary and find a blanket rule of waiver of the applicable work product privilege under these circumstances could very well discourage corporations from conducting a critical self-analysis and sharing the fruits of such an inquiry with the appropriate actors. *See id.* at 449.

Indeed, the government has long recognized the value of encouraging voluntary, proactive internal investigations and self-reporting by public companies. *See* SEC Release No. 44969/1470 (Oct. 23, 2001) (expressing the SEC's willingness to credit voluntary investigation, self-policing, self-reporting, remediation and cooperation with law enforcement authorities because such behavior is "unquestionably important in promoting investors' best interests"); Memorandum of Deputy Attorney General Larry D. Thompson, *Principles of Federal Prosecution of Business Organizations* (Jan. 20, 2003) (available at http://www.usdoj.gov/dag/cftf/business_organizations.pdf) (noting that DOJ must consider voluntary internal investigations and self-reporting as basis for more lenient treatment in determining whether to charge corporations), at 5. These policies serve the public interest by enabling the SEC and DOJ "to improve the quality and timeliness of its investigations, obtain appropriate relief

---

[2] The fact that Howrey responded to the auditors' questions regarding "dirty" or "clean" current or former employees also does not amount to disclosure of privileged communications or work product. The "dirty/clean" distinction was strictly a characterization devised by the auditors. Neither Howrey nor the Special Committee used such a broad, unrefined categorization during the investigation or in communications with the government. Responding to the auditors' inquiries based on their requested characterizations was not a disclosure of Howrey's impressions, opinions, conclusions or theories.

HOWREY LLP

-3-
NON-PARTY HOWREY'S REPLY ISO OPPO. TO ROBERTS' REQUEST FOR PROD. OF ATTORNEY NOTES
Case No. C-07-4580 MHP
DM_US:21038920_5

earlier, and save substantial time and resources and/or better preserve its ability to provide monetary relief to investors." Brief of the Securities And Exchange Commission, *Amicus Curiae*, at 14, in *U.S. v. Bergonzi*, 403 F.3d 1048 (9th Cir. 2005) (No. 03-10511).

   Consistent with the strong public policy encouraging critical self-policing by corporations, the government discourages requests for broad waivers of privilege like Roberts seeks here. Given the critical purposes of the attorney-client and work product privileges to successful and complete internal investigations, both the SEC and DOJ have policies of limiting requests for privileged materials arising out of investigations except in cases where it can establish a legitimate need for the privileged information to fulfill its law enforcement obligations. *See* Memorandum of Deputy Attorney General Paul J. McNulty, *Principles of Federal Prosecution of Business Organizations*, at 8 (available at http://www.usdoj.gov/dag/speeches/2006/mcnulty_memo.pdf) ("merely desirable or convenient" is not a sufficient reason for requesting a waiver of privileges). Indeed, even if a government entity has a legitimate need for such materials, the DOJ still requires its personnel to apply "the *least intrusive waiver* necessary to conduct a complete and thorough investigation . . . ." *See id.* at 9 (emphasis added). That is, the DOJ initially limits its request to "*purely factual information*," such as copies of key documents, witness statements, or purely factual interview memoranda. *See id.* (emphasis added). And, "only if the purely factual information provides an incomplete basis to conduct a thorough investigation should prosecutors then request that the corporation provide attorney-client communications or non-factual attorney work product." *See id.* at 10.

   These government policies are intended to facilitate the public policy of voluntary, proactive investigations and self-reporting, which can only be accomplished if a corporation has the protection of the attorney-client and work product protections. For the same reason, automatic and open-ended waiver of the attorney-client and work product privileges should not be the consequence of a company's disclosure of purely factual information to its auditors and the government. Sanctioning broad waivers would have a chilling effect on corporations' efforts to root out and prevent corporate fraud and disclose the results as necessary to the auditors and the government. In turn, the reliability of publicly disclosed information would be adversely affected, and the investing public ultimately hurt.

   Here, the disclosures made to the auditors and the government were of *factual* information, and

HOWREY LLP

-4-
NON-PARTY HOWREY'S REPLY ISO OPPO. TO ROBERTS' REQUEST FOR PROD. OF ATTORNEY NOTES
Case No. C-07-4580 MHP
DM_US:21038920_5

for the purpose of a critical self-analysis that ultimately benefited McAfee's shareholders as well as the investing public at large.  Given these facts, the true nature of the relationship between companies and their outside auditors, and the strong public policy favoring protection of privileges, Roberts' request for a broad waiver should not be granted.

### B. Roberts Has Not Met His Burden of Establishing Any Need for Howrey's Notes.

Nowhere in his court submissions or during oral argument has Roberts established anything close to the substantial and compelling need required for production of Howrey's interview notes.  *See* Roberts' Motion to Compel, at 5-6 and 14.  The few reasons offered by Roberts as to why this Court should order production of those privileged notes — for possible impeachment purposes or because witnesses' memories purportedly will have faded by the time of trial — are nothing more than thinly disguised efforts to conduct a "fishing expedition" for materials that Roberts may deem useful to his defense in his criminal trial.  *See id.* at 6 and n.5.  Of course, nothing in the Federal Rules of Criminal Procedure or applicable case law entitles Roberts to such an extraordinary opportunity.  The Court should decline Roberts' invitation to disregard both the public policy encouraging internal investigations and self-reporting and the attorney-client and work product privileges simply to give him information to which no other similarly situated criminal defendant would be permitted under applicable law.  Indeed, as the Court suggested at the February 25 hearing, the need to address this issue could perhaps be avoided altogether — or, at least put off until another day — by postponing the trial and discovery in this civil matter until after the criminal trial against Roberts has concluded.

## CONCLUSION

For all of the reasons stated in Non-Party Howrey's Memorandum of Points and Authorities in Opposition to Defendant Kent H. Roberts' Request for Production of Attorney Notes, at the February 25 hearing in this matter, and in this reply brief, Howrey respectfully requests that this Court deny Defendant Roberts' Motion to Compel.

Dated: February 29, 2008                                    HOWREY LLP

By:                          /s/ Robert E. Gooding, Jr.
                             Robert E. Gooding, Jr.
                             Roman E. Darmer
                             Helen Chae MacLeod
                             Attorneys for HOWREY LLP

HOWREY LLP

-5-
NON-PARTY HOWREY'S REPLY ISO OPPO. TO ROBERTS' REQUEST FOR PROD. OF ATTORNEY NOTES
Case No. C-07-4580 MHP
DM_US:21038920_5