COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (170085) (nealsc@cooley.com)
WILLIAM S. FREEMAN (82002) (freemanws@cooley.com)
SHANNON M. EAGAN (212830) (seagan@cooley.com)
EINAT SANDMAN CLARKE (234776) (eclarke@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5000
Facsimile:  (650) 857-0663

Attorneys for Defendant
Kent H. Roberts

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>KENT H. ROBERTS,<br><br>    Defendant. | Case No. C 07-04580 MHP<br><br>**DEFENDANT KENT H. ROBERTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY HOWREY LLP**<br><br>[Public Version] |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO COMPEL
CASE NO. C-07-4580 MHP

## INTRODUCTION AND SUMMARY OF ARGUMENT

When McAfee authorized Howrey to make repeated disclosures of privileged materials to adverse parties, it made a calculated, strategic decision that its own interests would be best served by cooperating with adversaries rather than by claiming privilege. Had it resisted a Government request or subpoena on grounds of privilege, there is no doubt that its objections would have been upheld; but because it felt a privilege objection would worsen its strategic position, it waived.

While Roberts understands the Court's concern for preserving privilege as a means to permit companies to cooperate with government investigations, Roberts respectfully suggests that under settled law, companies are not protected from the consequences of a knowing, strategic choice to make disclosures to the Government and others. As the Second Circuit has explained,

> Petitioner [who voluntarily disclosed work product to the SEC] alleges that a denial of the petition will present those in similar situations with a Hobson's choice between waiving work product protection through cooperation with investigatory authorities, or not cooperating with the authorities. Whether characterized as forcing a party in between a Scylla and Charybdis, a rock and a hard place, or some other tired but equally evocative metaphoric cliché, the "Hobson's choice" argument is unpersuasive given the facts of this case. An allegation that a party facing a federal investigation and the prospect of a civil fraud suit must make difficult choices is insufficient justification for carving a substantial exception to the waiver doctrine.

*In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993). Roberts here seeks simply to require McAfee to accept the burdens, as well as the benefits, of the "difficult choice" it knowingly made. A contrary result would permit McAfee to "manipulate the use of the privilege through selective assertion." *Id.*

### A. The Special Committee Waived Any Privilege When It Shared this Information Voluntarily in the Absence of a Subpoena.

Courts do not recognize a difference between producing documents to a government agency voluntarily or pursuant to subpoena. *See In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 208, 212 (N.D. Cal. 1992); *see also, Steinhardt Partners, supra; In re Qwest Commc'ns Int'l Inc.*, 450 F. 3d 1179, 1181 n.1 and 1199 (10th Cir. 2006) (finding waiver when company voluntarily

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO COMPEL
CASE NO. C-07-4580 MHP

1  shared documents with governmental agencies, despite acknowledgement of pressure for
2  companies to satisfy the Government). If anything, McAfee's *voluntary* waiver reinforces the
3  notion that it made a tactical decision that it should be required to live with.

**B.  Howrey's Narrow Interpretation of Waiver Is Not Supported By the Facts.**

Howrey continues to maintain that because it did not physically provide its notes to a third party, it did not waive attorney-client or work product protection. (Opp. at 8:12-15.) This is the same argument Judge Breyer termed "specious" in *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006). There is no question that Howrey disclosed the *substance* of the notes to the Government and other adversaries; it freely admits the same: "Howrey responded to questions from the government as to what certain individuals had said about particular issues during the course of their interviews." (Opp. at 5:18-20.) *See also,* Opp. at 5:9 (similar disclosures to Board); Opp. at 5:28-6:2 (auditors).

**C.  Howrey Has Shared its Mental Impressions with Other Adverse Former McAfee Employees**

**REDACTED**

Such testimony clearly constitutes disclosure to an adversary and is thus a waiver with respect to the content of interviews, Howrey's mental impressions of those interviews, and the notes thereof.

**D.  Under the Facts of this Case, McAfee's Sharing of Work Product with its Auditors is But Another Instance of Waiver.**

The parties have cited several cases revealing a split of authority as to whether disclosure of work product to auditors acts as a waiver with respect to third persons. *Medinol, Ltd. v. Boston*

---

[1]

**REDACTED**

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

2

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO COMPEL
CASE NO. C-07-4580 MHP

*Scientific Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002) (waiver found, based on view that auditor necessarily performed "independent watchdog" function); *Merrill Lynch v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 446-47 (S.D.N.Y. 2004) (no waiver found, based on view that auditor was not an "adversary or a conduit to a potential adversary"). Roberts submits for the Court's consideration two additional cases from this District in which disclosure to an auditor was found to have operated as a wavier of privilege: *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994); *Diasonics Securities Litig.*, 1986 WL 53402, Fed.Sec.L.Rep ¶ 92,817 (N.D. Cal, 1986). In both of these cases, the courts concluded that disclosure to the auditor did not further any litigation interest of the disclosing party. The same situation exists here.

Even the court in *Merrill Lynch v. Allegheny* concluded that "[t]hese cases turn on their facts." 229 F.R.D. at 446. There, the corporation had shared with its auditors two memos concerning an internal investigation into an officer's fraudulent scheme, but had not shared this information with the Government or any litigation adversaries. The court found that under these facts, there was no waiver because the "tension" resulting from the auditor's need to investigate company records did not amount to actual adversity. *Id.* at 448.

There are at least three significant differences between this case and *Allegheny*.

**REDACTED**

Second, unlike *Allegheny*, McAfee's disclosures to its auditors were part of a comprehensive strategy to disclose investigative results with multiple known adversaries in pursuit of the company's strategic interests.

Third, at the time of Howrey's disclosures, several investigations and lawsuits against McAfee were already underway. Auditors would be natural targets of these claims, and would have every incentive to establish that client personnel had deceived them in the course of their audits; thus there is no basis for an assertion that the auditors were McAfee's natural allies.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

3

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO COMPEL
CASE NO. C-07-4580 MHP

### E. Allowing Selective Waiver Here Would Be Unfair.

The Special Committee voluntarily shared information with several parties adverse to McAfee, yet now refuses to share the same information with Roberts. As Judge Jenkins recognized, "[i]t is inherently unfair to permit an entity to choose to disclose materials to one outsider while withholding them from another on the grounds of privilege." *United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003); *In re Qwest*, 450 F.3d at 1196 ("[a]llowing [the company] to choose who among its opponents would be privy to the [documents] is far from a universally accepted perspective of fairness"). Similarly, the work product doctrine "does not protect against the manipulation of selecting a particular opponent for selective disclosure – most probably for the discloser's own benefit." *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1375 (D.C. Cir. 1984). Having lowered the shield of privilege to foster an amicable relationship with the government and other adversaries, McAfee may not now raise it against the party injured by its disclosures. *See Permian Corp. v. United States*, 665 F.2d 1214, 1222 (D.D.C. 1981); *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006).

### F. Adoption of Selective Waiver Is a Decision for Congress.

A rule of selective waiver for government investigations is the substantial equivalent of a new rule of privilege. Such a rule does not promote the purposes of the attorney-client privilege or attorney work-product doctrine. *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1425 (3d Cir. 1991) ("selective waiver . . . protects disclosures made for entirely different purposes, [and thus] cannot be reconciled with traditional attorney-client privilege doctrine"). Because it would broaden the reach of the attorney-client privilege and work product doctrine, "selective waiver must be viewed with caution." *In re Qwest*, 450 F.3d at 1195.

The Supreme Court is "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *In re Qwest*, 450 F.3d at 1198 (quoting *Univ. of Pennsylvania. v. E.E.O.C.*, 493 U.S. 182, 189 (1990)). Congress has already rejected an amendment to the Securities Exchange Act of 1934 that would have established a selective waiver rule. *SEC Statement in Support of Proposed § 24(d) of the Securities and Exchange Act of 1934*, 16 Sec. Reg. & L. Rep. 461 (March

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

4

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO COMPEL
CASE NO. C-07-4580 MHP

2, 1984). Further, in May 2006, the Advisory Committee on Evidence Rules proposed Fed.R.Evid. 502(c) to address the issue of selective waiver – but this rule has yet to be adopted.

Until Congress chooses to make such a change, no expansion of privilege should occur. *In re Subpoenas Duces Tecum*, 738 F.2d at 1375; *In re Qwest*, 450 F.3d at 1192; *see also Branzburg v. Hayes*, 408 U.S. 665, 706 (1972) ("Congress has freedom to determine whether a statutory [] privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary").

### G. At a Minimum, the Facts Are No Longer Protected.

Roberts submits that a subject-matter waiver has taken place, requiring complete production of all of the documents listed in Howrey's privilege log. In the alternative, at the very least, the *facts* communicated by witnesses to Howrey, and by Howrey to McAfee's adversaries, must be disclosed. In the event the Court does not order a complete production of the listed documents, Roberts respectfully requests that the court order production of all portions of the documents reflecting facts, as opposed to mental impressions. Roberts would endeavor to work with Howrey in order to avoid the need for the Court's *in camera* review.

Dated: February 29, 2008

COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (170085)
WILLIAM S. FREEMAN (82002)
SHANNON M. EAGAN (212830)
EINAT SANDMAN CLARKE (234776)

/s/
William S. Freeman (82002)

Attorneys for Defendant
Kent H. Roberts

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

5

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO COMPEL
CASE NO. C-07-4580 MHP